62826. BICKNELL v. B & S ENTERPRISES et al.

BANKE, Judge.
The plaintiff purchased a used automobile from defendant B & S Enterprises, d/b/a Sexton's Auto Center, and returned it less than a day later, complaining of extensive defects. She brought this suit to recover her down payment, as well as statutory damages under the truth-in-lending provisions of the federal Consumer Credit Protection Act, 15 USCA §§ 1601 et seq. Named as co-defendants in the truth-in-lending claim were General Finance Corporation of Georgia and Cherokee Finance Company, Inc., each of which participated in the financing of the transaction. This appeal is from a directed verdict in favor of the defendants as to both counts.
The plaintiff concedes that she purchased the car "as is," and she does not allege fraud or breach of warranty. She contends, however, that the vehicle did not conform to the contract description and that she was consequently entitled either to reject it pursuant to Code Ann. § 109A-2—602 (UCC § 2-602) or to revoke her acceptance pursuant to Code Ann. § 109A-2—608 (UCC § 2-608).
The bill of sale describes the vehicle as a "1974 Pontiac Firebird 2-Dr." and contains the following language directly above the plaintiff's signature: "I hereby certify that said motor vehicle was demonstrated to me to my entire satisfaction, duly assigned title for same received, conditions of above sale are hereby understood and accepted by me, and copy hereof received." The plaintiff also signed a

retail installment contract at the time of purchase. This document described the vehicle as having an air-conditioner and AM-FM radio and stated: "... [D]elivery and acceptance of [the automobile] in good condition and repair is hereby acknowledged."

There is no question that the automobile was in fact a 1974 Pontiac Firebird with two doors; however, a mechanic to whom the plaintiff took the car the next day found the following problems: "... the cam shaft was worn, the gaskets were worn, ... the automobile had been wrecked, the side was bent in, filled with bondo, ... the car had been repainted and not very well; the car lacked an air-conditioner; the car lacked a radio; ... the brakes were leaking; the master cylinder needed replacing; the muffler would need replacement within a short future; three tires were bald. It was missing a jack. The tape deck didn't work. The shock on the left ... side needed replacing. The car was missing a horn. And ... various vacuum tubes and air hoses needed replacement."

There was no evidence that the dealer did anything at any time to prevent the plaintiff from inspecting or driving the car. The plaintiff testified that the reason she took the car to the mechanic the next day was that "I was concerned because the price I paid for the car, after all the finance charges and everything, was twice what the car was worth."

The financing was arranged by the dealer. On the day of the sale, the dealer's agent drove the plaintiff, in the Firebird, to Cherokee Finance Company, where she signed the loan contract and the dealer was issued a check for part of the down payment. Immediately before or after this transaction, the plaintiff executed the retail installment contract and wrote a personal check for the remainder of the down payment. The retail installment contract was subsequently assigned to General Finance Corporation of Georgia. *Held:*

1. "Acceptance of goods occurs when the buyer (a) after reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity ..." Code Ann. § 109A-2—606 (1). The plaintiff had ample opportunity to inspect the car to ascertain whether it had an operating air-conditioner and radio before she took possession of it and signed the bill of sale and the financing documents. It follows that she had no subsequent right to reject the vehicle for nonconformance.

2. Code Ann. § 109A-2—608, entitled "Revocation of acceptance in whole or in part," provides as follows: "(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity

would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

"In determining whether revocation was made within a reasonable time after the buyer discovered or should have discovered the nonconformity, it is proper to consider all the surrounding circumstances, including the nature of the defect, the sophistication of the buyer, and the difficulty of its discovery . . . 2 Anderson, Uniform Commercial Code § 2-608:20 (2d ed. 1971); Annot., 65 ALR 3d 354, 360-61 (1975)." Harrington Mfg. Co. v. Logan Tontz Co., 40 N. C. App. 496 (253 SE2d 282, 286).

As previously indicated, the plaintiff purchased the automobile "as is." It follows that although it may have been in poor operating condition and in need of extensive repairs, those factors did not place it in nonconformance with the contract. See Code Ann. § 109A-2—316 (3) (a) (UCC § 2-316 (3) (a)). Insofar as the contract description is concerned, the dealer was required only to provide the plaintiff with a 1974 2-door Pontiac Firebird with an air-conditioner and an AM-FM radio. Assuming that the car had no functioning air-conditioner or radio, the dispositive issue thus boils down to whether a jury could reasonably infer from the evidence introduced at trial that the plaintiff's failure to discover these deficiencies at the time of acceptance "was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Code Ann. § 109A-2—608 (1) (b), supra.

While the plaintiff's position in this case inspires sympathy, it is clear that nothing prevented her from attempting to turn on the radio or the air-conditioner before she drove the car home. It is further clear that the dealer did nothing to conceal the condition of this equipment from her nor did anyone make any assurances to her with regard to the equipment. Given the ease with which the plaintiff could have discovered the alleged nonconformance, we are thus constrained to hold, as did the trial court, that she had no grounds to revoke her acceptance of the automobile. See generally Annot., 65 ALR3d 354, supra, § 11.

3. The plaintiff has cited only one alleged truth-in-lending deficiency — the conflict between disclosure on the retail installment

contract that a down payment of $1,003.80 was made and the plaintiff's testimony that her down payment check was for only $422. The difference is easily explained by the additional payment to the dealer of the loan proceeds from Cherokee Finance Company. While there may or may not have been some other deficiency in the loan contract or the retail installment contract, none has been specified. We are thus presented with no basis upon which to reverse the directed verdict on this count of the complaint. See generally *Witlen v. Witlen,* 149 Ga. App. 88, 89 (253 SE2d 450) (1979).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED NOVEMBER 5, 1981.

*Charles C. Carter,* for appellant.
*James A. Elkins, Jr.,* for appellees.