A92A0659. PRUDENTIAL METAL SUPPLY CORPORATION et al. v. ATLANTIC FREIGHT SALES COMPANY.

(419 SE2d 520)

ANDREWS, Judge.

Atlantic Freight Sales Company (Atlantic) sued Prudential Metal Supply Corporation d/b/a Prudential Southern Building Material et al. (Prudential) for amounts claimed due under a contract for the sale of goods governed by the Uniform Commercial Code. The trial court granted summary judgment in favor of Atlantic in the amount of $17,500, and Prudential appeals.

In support of its motion for summary judgment, Atlantic relied upon the affidavits of Witter and Corcoran. Witter, president of Atlantic, deposed that Prudential agreed to purchase certain materials for $17,500; that the materials were sold "as is"; that Prudential inspected the materials at the Atlantic warehouse, accepted them, took delivery, and failed to pay Atlantic's invoice for $17,500. The invoice was attached to the affidavit. Corcoran, who was an employee of Prudential at the time of the transaction, stated that he had authority to purchase necessary materials for Prudential; that he inspected materials at Atlantic's warehouse, and agreed to purchase a portion of those materials for $17,500; that the sale was a final sale and there was no agreement concerning the return of the materials; that a portion of the materials was moved to Prudential's Georgia office and later sold by Prudential; and, the remainder was shipped to Prudential's office in Massachusetts. In opposition to summary judgment, Prudential filed the affidavit of its chief operating officer, Kolikof, who deposed that he had personal knowledge of the transaction between Atlantic and Prudential; that the agreement was for the purchase of nail guns, spare parts for nail guns, nails and staples, which were represented by Atlantic to be current models, sorted, packed and labeled; that Corcoran had no authority to accept the material on behalf of Prudential; that because of the difficulty of determining the condition of the materials at Atlantic's warehouse, Prudential agreed to transport the materials to its warehouse for a complete inspection to determine whether they would be accepted; that the materials were transported to Prudential's warehouse in Massachusetts, inspected and rejected because they did not conform to the representations made by Atlantic; and, that Atlantic was promptly notified of the rejection. Prudential continues to hold the materials for return to Atlantic.

We must construe the facts and any inferences that may be drawn from these contradictory affidavits in favor of Prudential, the party opposing summary judgment. At a minimum, there are factual disputes as to whether the goods were to be purchased "as is," or whether Atlantic made representations to which the goods failed to conform; whether Corcoran accepted the goods at the Atlantic warehouse after a reasonable opportunity for inspection; or, whether the goods were delivered to Prudential, inspected at that time, and rejected as nonconforming, and whether Prudential accepted and sold a part of the goods, or rejected the whole.[1]

"The buyer must pay at the contract price for any goods accepted." OCGA § 11-2-607 (1). The buyer is entitled to accept or reject goods which fail to conform to the contract by rejecting or accepting the whole, or by accepting any commercial unit or units (see OCGA § 11-2-105 (6)), and rejecting the rest. OCGA § 11-2-601. Acceptance occurs when, after a reasonable opportunity to inspect the goods, the buyer indicates the goods are conforming or that he will take them despite the nonconformity, or the buyer acts in a manner inconsistent with the seller's ownership. OCGA § 11-2-606. Acceptance of any part of a commercial unit is acceptance of the whole unit. OCGA § 11-2-606 (2). Within a reasonable time after delivery or tender, the buyer is entitled to reject nonconforming goods under the provisions of OCGA § 11-2-602 if the buyer seasonably notifies the seller of the rejection. SPS Indus. v. Atlantic Steel Co., 186 Ga. App. 94, 98 (366 SE2d 410) (1988) (rejection under OCGA § 11-2-606 ordinarily a question of fact). Moreover, even after acceptance, the buyer has a right to revoke acceptance under the provisions of OCGA § 11-2-608 for nonconformance that substantially impairs the value of the goods. Griffith v. Stovall Tire &c. Inc., 174 Ga. App. 137, 139 (329 SE2d 234) (1985) (whether revocation of acceptance accomplished under OCGA § 11-2-608 is ordinarily a factual question). Revocation is an available remedy even where the seller has attempted to limit its warranties by use of "as is" language under OCGA § 11-2-316. Esquire Mobile Homes v. Arrendale, 182 Ga. App. 528, 529 (356 SE2d 250) (1987).

Whether Prudential acted within the scope of these provisions to accept or reject the goods at issue presents factual questions precluding summary judgment.

*Judgment reversed. Birdsong, P. J., and Beasley, J., concur.*

---

[1] Since the applicable statute of frauds has not been raised by Prudential as an affirmative defense in its pleadings, by motion, or otherwise, no issue is presented as to whether the asserted contract complies with the writing requirements of OCGA § 11-2-201. *Brantley Co. v. Simmons*, 196 Ga. App. 233, 234 (395 SE2d 656) (1990).

DECIDED JUNE 3, 1992.

*Walker & Bailey, Wayne A. Bailey,* for appellants.
*Rice & Keene, Kirk W. Keene,* for appellee.