A04A1570, A04A1571. MITCHELL FAMILY DEVELOPMENT COMPANY, INC. et al. v. UNIVERSAL TEXTILE TECHNOLOGIES, LLC; and vice versa.

(602 SE2d 878)

PHIPPS, Judge.

This case pits the Mitchell Family Development Company, Inc., d/b/a American Cutting & Die Company, Inc. (ACD), and two of its principals, David and Erwin Mitchell, against Universal Textile Technologies, LLC (Universal) and Kasbar National Industries, Inc.

ACD sells carpeting mats. Kasbar provides ACD with the face material for the mats. Universal combines the face material with a polyurethane backing which Universal produces. Universal then supplies the finished product to ACD. Some of the carpet matting provided to ACD by Universal and Kasbar proved defective. As a result, ACD stopped making payments on its open account with Universal. To recover on the account, Universal brought this suit against ACD and the Mitchells (who had guaranteed payment of the account). ACD denied liability and filed a counterclaim against Universal, as well as a third party complaint against Kasbar, for damages caused by the defective carpeting. The trial court granted partial summary judgment in favor of Universal against ACD and the Mitchells, finding that the sum owed by ACD on its account with Universal exceeds the damages sought by ACD against Universal in the amount of $45,106.57. We disagree and reverse that ruling.

Universal became ACD's product manufacturer and seller in September 2000. In September or October 2001, ACD notified Universal that a condition known as "peppering" was appearing on the carpet mats. "Peppering" occurs when the carpet backing bleeds onto the face material, giving the appearance of black dots or pepper. Universal blamed the problem on the facing material being supplied

by Kasbar. Kasbar, in turn, blamed the problem on Universal's manufacturing process. ACD continued to use Kasbar as the supplier of facing material and Universal as the supplier of the backing as well as the manufacturer of the final product, while it conducted its own tests to determine who was at fault.

Beginning in February 2002, Universal began complaining to ACD and to David Mitchell about delinquencies owed on the ACD account. ACD refused to make any payments to Universal until its claims against Universal for the defective mats were resolved. ACD nonetheless continued to order the mats from Universal, and Universal continued to fill the orders, through April 2002. As of that time, Universal had billed ACD $120,662 for its goods and services.

In June 2002, ACD sent Universal a letter asserting that responsibility for the peppering lay with Universal or Kasbar or both, and claiming that Universal owed it $50,960 for defective goods, plus $24,595 representing one-half of the $49,190 it had incurred in testing expenses. Universal responded with letters notifying ACD that its total account balance was $130,005 and demanding payment of the difference between that amount and the cumulative amount of the claims set forth in ACD's letter to Universal.

Thereafter, Universal filed this complaint against ACD and the Mitchells claiming, among other things, that they were liable to Universal on an open account balance in the principal amount of $120,662. ACD filed an answer charging Universal with breach of warranty and contract in failing to properly apply its polyurethane backing to the product delivered to ACD by Kasbar and counterclaiming for damages incurred by ACD as a result. ACD also filed a third party complaint charging Kasbar with breach of warranty and contract in supplying defective face material.

Arguing that it could not be held liable for any of the testing expenses incurred by ACD, Universal determined that ACD indisputably owed it $69,701 (representing the difference between the $120,662 claimed by Universal to be due on the open account and the $50,960 damage claim by ACD against Universal for defective goods); and Universal moved for partial summary judgment in the amount of $69,701. ACD opposed Universal's motion for partial summary judgment, arguing among other things that it was also asserting a damage claim against Universal for $23,962 in lost profits.

The trial court awarded Universal partial summary judgment in the amount of $45,106. The court calculated this amount by finding $120,662 as the total balance due on ACD's account with Universal, and then deducting $50,960 in charge backs claimed by ACD for defective goods and $24,595 for one-half of the testing expenses sought by ACD in its June 2002 letter to Universal. The court disallowed ACD's claim for lost profits on the ground that David

Mitchell had given contradictory testimony on this issue in his affidavit and deposition. In Case No. A04A1570, ACD and the Mitchells appeal the award of partial summary judgment to Universal. In Case No. A04A1571, Universal cross-appeals the trial court's deduction of one-half of ACD's testing expenses in determining the amount of the partial summary judgment award.

1. Universal contends that the trial court erred in allowing testing expenses as an offset to the undisputed balance owed by ACD to Universal, because the testing expenses were not "cover" as defined by OCGA § 11-2-712 (UCC § 2-712), they were not an expense of effecting cover under OCGA § 11-2-715 (UCC § 2-715), and Universal did not agree to reimburse ACD for any of these expenses. We find no merit in this contention.

> The UCC groups the types of remedies available to a buyer for a breach according to the action taken by the buyer with respect to the breach. The UCC categorizes the remedies into two classes: those afforded a buyer who rejects the goods or revokes his acceptance of them, and those provided to the buyer for a breach of accepted goods. [Cit.] Both categories of remedies permit the recovery of expenses in the form of incidental and consequential damages provided by [OCGA § 11-2-715]. [Cits.][1]

Where a buyer rejects or justifiably revokes acceptance of goods, OCGA § 11-2-712 (1) authorizes the buyer to "cover" by purchasing or contracting to purchase substitute goods. Under OCGA § 11-2-712 (2), the buyer may then recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as defined in OCGA § 11-2-715. But under OCGA § 11-2-712 (3), failure of the buyer to effect cover does not bar him from any other remedy.

OCGA § 11-2-714 (1) provides that, where a buyer has accepted goods and given notification of breach to the seller, the buyer "may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." Under OCGA § 11-2-714 (2), the measure of damages for breach of warranty is the difference between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. OCGA § 11-2-714 (3)

---

[1] *Poultry Health Svc. of Ga. v. Moxley,* 538 FSupp. 276, 278 (S.D. Ga. 1982).

provides that, in a proper case, any incidental and consequential damages under OCGA § 11-2-715 may also be recovered.

Under OCGA § 11-2-715 (1),

> [i]ncidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation, and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses, or commissions in connection with effecting cover, and any other reasonable expense incident to the delay or other breach.[2]

Here, ACD in essence claims that it incurred the testing expenses in order to determine how to effect cover. A jury might be authorized to find that ultimately the test expenses were incurred "in connection with effecting cover," or even "in inspection" of the goods. More generally, a jury might find the testing costs to be a "reasonable expense" incurred by ACD "incident to" Universal's breach.[3] Therefore, the expenses may be recoverable as incidental damages under OCGA § 11-2-715 (1), and the trial court did not err in so ruling.

2. ACD contends that in calculating the amount it indisputably owed to Universal, the trial court should have deducted the full amount of the testing expenses instead of only one-half of the expenses. We agree.

Although prior to filing this lawsuit ACD asked Universal and Kasbar to each reimburse ACD for one-half of the testing expenses, under the pleadings filed in this litigation a jury might find either Universal or Kasbar liable for all of the expenses.

3. ACD contends that the trial court erred in disallowing its claim for lost profits based on contradictory testimony by Mitchell in his affidavit and deposition. We agree.

The rule in Georgia is that if, on motion for summary judgment, a party offers self-contradictory testimony, the trial court must eliminate the favorable portions of the contradictory testimony unless a reasonable explanation is offered for the contradiction; if a contradiction is explained, then the issue is merely one of credibility of the witness.[4]

In his affidavit, Mitchell testified that as a result of the defective goods provided to ACD by Universal, ACD had lost profits of $23,962.61.

---

[2] See generally *Taylor v. Wilson*, 109 Ga. App. 658, 660 (1) (137 SE2d 353) (1964).

[3] Cf. id. (buyer of defective equipment may recover reasonable expense of attempting to operate the equipment).

[4] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

In cross-examining Mitchell during his deposition, counsel for Universal produced ACD's June 2002 letter to Universal and asked him whether it summarized all of ACD's claims and offsets against Universal. Mitchell responded, "Possibly. . . . I don't know if there are any damages for lost labor, or wasted time, things like that." Universal's counsel then asserted that ACD had not quantified any damages for any other claims other than those set forth in the letter. Mitchell answered, "I believe that's correct." Counsel then asked Mitchell, "I believe, in [the letter], you had summarized the total claims against Universal as being $50,960; is that correct?" Mitchell answered "yes," even though the letter also asserted a $24,595 claim against Universal for one-half of the $49,190 test expenses incurred by ACD. Counsel thereupon asked whether ACD had any dispute with Universal other than the $50,960. Mitchell responded, "I don't believe so."

Mitchell testified in his affidavit that ACD had incurred $23,962 in lost profits as a result of the defective goods. In his deposition, he was never specifically asked whether that was true or even whether ACD was asserting a claim against Universal for lost profits. He was only asked whether the June 2002 letter summarized all of ACD's claims against Universal. In Mitchell's initial response, he expressed the possibility that ACD might be asserting claims against Universal for other losses. Any conflicting responses given by Mitchell later in his deposition can be reasonably explained by his uncertainty whether ACD was seeking to recover its lost profits in this suit and to confusion by both Mitchell and Universal's attorney as to the content of the June 2002 letter. Under the totality of Mitchell's testimony, any conflict was a matter of credibility for the jury to resolve.[5]

4. Because the amount of damages that ACD could recover against Universal on ACD's counterclaim ($50,960 for defective goods, $49,180 in testing expenses, and $23,962 in lost profits) exceeds the $120,662 claimed to be due by ACD to Universal in Universal's complaint, the trial court erred in awarding partial summary judgment to Universal.[6]

For the reasons given in Division 1, the judgment in the cross-appeal is affirmed. For the reasons given in the remaining Divisions, the judgment in the main appeal is reversed.

*Judgment reversed in Case No. A04A1570. Judgment affirmed in Case No. A04A1571. Smith, C. J., and Johnson, P. J., concur.*

---

[5] See *Bass Custom Landscapes v. Cunard*, 258 Ga. App. 617, 621-623 (2) (575 SE2d 17) (2002).

[6] See *Beavers v. Mastan Co.*, 124 Ga. App. 498 (184 SE2d 476) (1971).

DECIDED AUGUST 2, 2004.

*Waycaster, Morris & Dean, R. Leslie Waycaster, Jr.*, for appellants.

*Hine & Niedrach, Edward Hine, Jr., Christopher P. Twyman*, for appellee.