## A07A1333. FRANKLIN v. AUGUSTA DODGE, INC. et al.
### (652 SE2d 862)

PHIPPS, Judge.

The buyer of a new truck brought this suit against the dealer, manufacturer, and purchase money lender. In his complaint, the buyer alleged incessant problems with the truck after its purchase, because of which he revoked his acceptance of the truck and sought return of the purchase price or damages for breach of warranty. At a jury trial, the court granted the defendants' motions for a directed verdict on grounds that (1) the buyer had re-accepted the truck by continuing to drive it and exercising other incidents of ownership after the manufacturer and dealer refused to take it back, and (2) the buyer did not prove damages for breach of warranty. Finding evidence from which a jury could find that the buyer's conduct did not constitute a re-acceptance of the truck, we reverse the court's grant of the defendants' motion for directed verdict on the buyer's revocation of acceptance claim. We agree, however, that the defendants were entitled to a directed verdict on the buyer's breach of warranty claim.

"A verdict shall be directed when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[1]

> A motion for directed verdict should not be granted where there exists even slight material issues of fact, because the trial court is substituting its judgment for the jury's. On appeal, we review directed verdicts based upon the "any evidence" rule; if there is any evidence to support the case of the nonmoving party, a directed verdict must be reversed.[2]

The evidence here showed that on April 2, 2004, Samuel Franklin bought a new Dodge 2004 Ram truck from Augusta Dodge, Inc. (the dealer) and DaimlerChrysler Motors Company, LLC (the manufacturer) by making a down payment of $5,715 (of which $3,000 was rebated) and financing the $24,000 balance through a promissory note payable to Citizens Auto Finance, Inc. Franklin received a factory warranty on the truck as part of the purchase price and paid for a service contract to obtain additional warranty protection. Shortly after Franklin bought the truck, he began having problems with it. These problems — as shown by the testimony of Franklin and his wife

---

[1] *Joiner v. Lane*, 235 Ga. App. 121, 122 (1) (508 SE2d 203) (1998) (citations omitted).

[2] *Chong v. Reebaa Constr. Co.*, 284 Ga. App. 830, 834 (4) (645 SE2d 47) (2007) (citation and punctuation omitted).

and as documented by various invoices in the record — involved parts and features such as the seating, the satellite radio system, the air bag, the battery, rear-end and air-conditioning seals, the ignition switch, the horn, and the stabilizer bar.

Franklin testified that he had taken the truck to the dealer for repairs more than 30 times and that it had thus been "in the shop" more than it had been at his house. According to Franklin, Augusta Dodge on one occasion kept the truck for over a week, telephoned him to pick it up even though it had not been fixed, and then threatened to have it towed if he did not remove it from the premises. Franklin and his wife testified that on another occasion, the manufacturer offered to let him trade the truck in for another truck, but he did not do so because he would have also been required to pay about $6,000 more for the higher value of the other truck and the mileage on his current truck. By letter dated November 18, 2004, Franklin informed the manufacturer of his continuing problems with the truck and asked for a replacement or refund. He testified that he received no response. He also testified that he asked the service manager at the dealership to take back the truck and that, after much delay, the service manager told him that he could not do that and to "do what you've got to do." As a result, Franklin brought this suit.

Franklin and his wife testified that they continued to use the truck, and that he continued to pay the note and ad valorem taxes on the truck and to insure it, because he could not afford to buy another truck while attempting to resolve the problems with this one and they had no other feasible means of transportation. Franklin further testified that the truck had less than 8,000 miles on it when he first tried to return it, and that it had about 40,000 miles on it at the time of trial.

At the close of Franklin's evidence, the defendants moved for a directed verdict on grounds that Franklin is barred from claiming revocation of acceptance because he re-accepted the truck by continuing to drive, pay for, and maintain it; and that he failed to prove damages for breach of warranty. The court granted the defense motions.

1. The trial court erred in granting the defense motions for directed verdict on Franklin's revocation of acceptance claim, which is controlled by the Uniform Commercial Code as codified at OCGA § 11-1-101 et seq.

Under OCGA § 11-2-608 (1),

[t]he buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it: (a) On the reasonable assumption that its nonconformity would be cured and it has not been

seasonably cured; or (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.[3]

OCGA § 11-2-608 (2) provides that "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."[4] And OCGA § 11-2-608 (3) states that "[a] buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."[5]

Also, OCGA § 11-2-711 (3) permits a buyer who has rightfully rejected, or justifiably revoked his acceptance of, goods to hold them and resell them in the same manner as could an aggrieved seller. However, any post-rejection exercise of ownership by the buyer with respect to the goods is wrongful as against the seller. OCGA § 11-2-602 (2) (a). Moreover, when a buyer fails to make an effective rejection or when he does any act inconsistent with the seller's ownership of goods, he has accepted them. OCGA § 11-2-606 (1) (b), (c).[6]

Although certain of the provisions in OCGA §§ 11-2-602 and 11-2-606 might thus be said to support the unqualified proposition that "[c]ontinued use is inconsistent with a revocation of acceptance,"[7] we have held that "issues such as whether an effective revocation of acceptance was made . . . are ordinarily matters for determination by the trior of fact, even where the buyer has continued to use nonconforming goods after an alleged revocation of acceptance."[8] This is so because "[a]voidance of an absolute rule against

---

[3] See *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850, 851 (1) (278 SE2d 689) (1981); *Jacobs v. Metro Chrysler-Plymouth*, 125 Ga. App. 462, 467-468 (2) (188 SE2d 250) (1972).

[4] See *Griffith v. Stovall Tire & Marine*, 174 Ga. App. 137-138 (1) (329 SE2d 234) (1985).

[5] See id. at 138.

[6] Id. (citation omitted); see *Small v. Savannah Intl. Motors*, 275 Ga. App. 12, 13-14 (1) (619 SE2d 738) (2005); *Olson v. Ford Motor Co.*, 258 Ga. App. 848, 850-851 (1) (575 SE2d 743) (2002); *Fiat Auto U.S.A. v. Hollums*, 185 Ga. App. 113, 114 (3) (363 SE2d 312) (1987); *Hines v. Mercedes-Benz USA*, 358 FSupp.2d 1222 (N.D. Ga. 2005).

[7] *Jenkins v. Gen. Motors Corp.*, 240 Ga. App. 636, 638 (4) (524 SE2d 324) (1999) (footnote omitted).

[8] *Griffith*, supra at 139 (1) (citations omitted).

continued use is counseled by the overriding requirement of reasonableness which permeates the [UCC]."[9]

> However, cases involving issues which are not usually susceptible to summary adjudication may properly be resolved as a matter of law . . . *if* the uncontroverted facts establish that a plaintiff is not entitled to recover. Issues relating to a revocation of acceptance under the provisions of the UCC have been determined as a matter of law in such circumstances.[10]

Thus in *Griffith v. Stovall Tire & Marine*,[11] we held that the seller of a van was entitled to summary judgment on a dissatisfied buyer's claim for revocation of acceptance, where the uncontroverted evidence showed that the buyer refused to return the vehicle to the seller so that his complaints concerning the van could be evaluated and repairs made but instead continued to drive the van over 120,000 miles after notifying the seller of his revocation of acceptance. Similarly, acts of a truck buyer in *Olson v. Ford Motor Co.*[12] constituted re-acceptance of the vehicle as a matter of law because, in addition to continuing to pay the note and ad valorem taxes and carry insurance on the vehicle, he refused to give the seller an opportunity to repair it. In *Fiat Auto U.S.A. v. Hollums*,[13] we held that, as a matter of law, the buyer of a car who returned the car to the dealer's lot but then retrieved it, painted it a different color, and continued to drive it, insure it, and pay taxes on it, could not rescind the purchase contract by claiming that he had revoked his acceptance of the car.

In *Jenkins v. Gen. Motors Corp.*,[14] the buyer of a truck claimed that he had revoked his acceptance of it over a year after he had purchased it because the brakes had failed and caused it to collide with an automobile. But the buyer did not show that failure of the brakes was caused by any defect in the truck existing at the time of sale or by any negligence attributable to the manufacturer.[15] Moreover, he retained the truck and continued to drive it after the collision. Therefore, his claim for revocation of acceptance failed as a matter of law. Likewise, in *Hines v. Mercedes-Benz USA*,[16] the federal district

---

[9] *Fablok Mills, Inc. v. Cocker Machine & Foundry Co.*, 310 A2d 491, 494 (N.J. Super. 1973).
[10] *Griffith*, supra at 139 (citations omitted; emphasis in original).
[11] Supra.
[12] Supra.
[13] Supra.
[14] Supra.
[15] 240 Ga. App. at 636-637 (1), (2).
[16] Supra.

court held that under Georgia law a car buyer's claim for revocation of acceptance failed as a matter of law, because he continued to drive it, pay taxes on it, and insure it, even though he had another vehicle.

In *Small v. Savannah Intl. Motors*,[17] the buyers of a BMW decided they wanted to return it for reasons unrelated to certain problems, such as an odometer rollback, that they had discovered after their purchase. And after they unsuccessfully sought to return the car, they continued to drive it and pay the car note (even though the third-party bank holding the note was subject to all defenses that the buyers could assert against the seller). Under those circumstances, we held that the buyers had a claim for damages as a result of the odometer rollback but not for revocation of acceptance under the UCC or for rescission of the purchase on grounds of fraud and deceit.[18]

But in *Pavesi v. Ford Motor Co.*,[19] as here, the buyer of a new vehicle revoked his acceptance of it and the seller refused to rescind the sale. There the court held that because a motor vehicle was a necessity to the buyer, and because he had no practical alternative other than to continue to drive the car due to his limited financial resources, he was not barred from rescission because of his continued use of the vehicle (although the seller was entitled to an offset against the purchase price for the mileage driven). The court recognized that "[t]o require such a buyer to discontinue his use and suffer financial or other hardship would be contrary to the [UCC's] rule of reasonableness and its underlying purposes and policies."[20] Similarly, in *Mitchell v. Backus Cadillac-Pontiac*,[21] we held that where a car buyer attempted to return the vehicle but the seller refused to accept it, the buyer's continued possession of the vehicle did not warrant a directed verdict on his rescission claim. "[R]evocation of acceptance is intended to provide the same relief as rescission of a contract of sale of goods."[22]

Clearly, there are facts in this case that bring it in line with cases such as *Pavesi* and *Mitchell*. And there are facts in *Griffith*, *Olson*, *Hollums*, *Jenkins*, *Hines*, and *Small* that distinguish each of those cases from the one here.

2. The court did not err in granting the defendants' motion for directed verdict on Franklin's breach of warranty claim.

---

[17] Supra.

[18] 275 Ga. App. at 13-18 (1), (2), (6).

[19] 382 A2d 954 (N.J. Super. 1978), disapproved on other grounds, *Ramirez v. Autosport*, 440 A2d 1345, 1351 (N.J. 1982).

[20] *Pavesi*, supra at 956 (citations omitted).

[21] 274 Ga. App. 330, 334-335 (2) (618 SE2d 87) (2005).

[22] *Ramirez*, supra at 1351 (II) (citations omitted).

The measure of damages in a breach of warranty action is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.[23]

By his own admission, Franklin presented no evidence of the value of the truck as accepted. Nor, in our view of the record, did he submit evidence of proximate damages in a different amount.[24]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 12, 2007.

*Allen W. Johnson*, for appellant.

*Hull, Towill, Norman, Barrett & Salley, George R. Hall, Hollowell, Foster & Gepp, LaShawn W. Terry, Douglas J. Flanagan*, for appellees.

---

[23] *Small*, supra, 275 Ga. App. at 14 (3) (citations and punctuation omitted).

[24] Compare *Mitchell Family Dev. Co. v. Universal Textile &c.*, 268 Ga. App. 869 (602 SE2d 878) (2004).