June 25, 2025

# In the Court of Appeals of Georgia

A25A0081, A25A0082. VAH v. PLATINUM MARIETTA, INC.; and vice versa.

BARNES, Presiding Judge.

Fred Vah bought a used car from Platinum Marietta, Inc. "as is" with no warranties. Five months later, Vah sued Platinum for fraud and other claims, alleging that it failed to disclose that the car had previously been in an accident. The trial court granted summary judgment to Platinum on all claims except Vah's claim for revocation of acceptance under Georgia's Uniform Commercial Code ("UCC"). The parties now cross-appeal. We conclude that Platinum was entitled to summary judgment on all of Vah's claims because (1) the comprehensive merger, "as is," and warranty disclaimer clauses in the parties' contract foreclosed justifiable reliance on any extracontractual representations; and (2) those same clauses precluded Vah from

showing any nonconformity in the car that would permit revocation under the UCC. Accordingly, we affirm the trial court's judgment in Vah's appeal, Case No. A25A0081, and reverse its judgment in Platinum's appeal, Case No. A25A0082.

The record shows that on July 7, 2021, Vah purchased from Platinum a 2016 Audi Q5 with an odometer reading of 70,970 miles. Vah claims that he learned about the car through an online advertisement stating that it had "no known accidents" and "no known bodywork." Vah went to the dealership, where — he alleges — Platinum's salesperson verbally assured him that the car had not been in any previous accidents. The salesperson also gave Vah a Carfax report listing no reported accidents or damage.[1] The report noted, however, that it was based only on information supplied to Carfax, that problems with the vehicle may not have been reported, and that the report should be used "as one important tool, along with a vehicle inspection and test drive," to make a buying decision. Vah visually inspected the car, test drove it, and decided to buy it.

Vah signed a bill of sale providing: "Purchaser agrees that this order includes all of the terms and conditions hereof, that this order cancels and supersedes any prior

---

[1] According to Platinum's controller, Carfax is "a third-party company compiling data reported by dealerships, mechanics, repair shops, and other sources in reference to a particular vehicle."

agreement written or oral." The bill of sale further stated: "I make this purchase knowingly without any guarantee express or implied, by this dealer or his agent." In connection with the purchase, Vah also initialed a "Buyers Guide" stating that the sale was "as is" with no dealer warranty. The guide advised: "Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing." Finally, the guide contained a comprehensive list of "major defects that may occur in used motor vehicles" and recommended that Vah "[a]sk the dealer if your mechanic can inspect the vehicle on or off the lot." Vah did not obtain any independent pre-sale inspection of the car.

In October 2021, more than three months after the purchase, Vah engaged a collision repair specialist to inspect the car. The specialist opined that the car had previously been in a collision and "[i]t would be impossible for any dealer to not be aware of the damage history of this vehicle based on the obvious evidence of repairs." At some unspecified time, Vah asked Platinum to cancel the sale of the car, but Platinum refused.[2] Vah still owns the car, and as of December 2022, he had driven it more than 30,000 miles.

---

[2] Vah's affidavit does not indicate when he tried to rescind the sale. In November 2021, four months after the purchase, Vah's attorney sent correspondence to Platinum, but it is not clear whether that correspondence, which is not in the record, sought a rescission.

In December 2021, Vah sued Platinum, asserting claims for rescission for material misrepresentation of facts (Count 1); violation of the Georgia Fair Business Practices Act ("FBPA") (Count 2); violation of the Georgia Used Motor Vehicle Dealers' Act, OCGA § 43-47-1 et seq. (Count 3); deceit (Count 4); and revocation of acceptance under Georgia's UCC, OCGA § 11-2-101 et seq. (Count 5). Platinum moved for summary judgment on all claims. The trial court granted the motion as to Vah's first four claims, ruling among other things that the merger and "as is" clauses in the sales agreement barred recovery. The court denied the motion as to Vah's UCC claim, however, ruling that revocation is an available UCC remedy despite the "as is" language in the parties' agreement and that whether Vah revoked acceptance within a reasonable time was a jury question.

In Case No. A25A0081, Vah appeals the grant of summary judgment to Platinum on his first four claims. In Case No. A25A0082, Platinum appeals the denial of its motion for summary judgment as to Vah's UCC claim for revocation of acceptance. For reasons that follow, we affirm the trial court in Case No. A25A0081 and reverse in Case No. A25A0082.

> A grant of summary judgment is appropriate where the moving party demonstrates that there exists no genuine issue of material fact and that in light of the undisputed facts, the relevant law requires judgment

4

in favor of the movant. A movant may carry this burden by showing, inter alia, that the nonmovant lacks evidence to support an essential element of his or her cause of action. In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion.

(Citations and punctuation omitted). *Wilson v. Allied Paving Contractors*, 372 Ga. App. 400, 404 (903 SE2d 700) (2024). With these legal principles in mind, we turn to the parties' arguments.

*Case No. A25A0081*

1. In several enumerations of error, Vah argues that the trial court erred by finding that the merger clause in the bill of sale barred his claims for rescission for material misrepresentation of facts, violation of the FBPA, and deceit (Counts 1, 2, and 4). We disagree.

(a) As an initial matter, all three of these claims require Vah to prove that he justifiably relied on Platinum's alleged misrepresentations that the car had not been in an accident. Count 1, in which Vah sought rescission on the ground that he would not have bought the car had he known about its accident history, amounts to a claim for fraud in the inducement. See *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 152

5

(2) (304 SE2d 365) (1983) ("An action for fraudulent inducement can be made out . . . [by] show[ing] that the defendant made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was made with the intent that it be acted upon by the plaintiff; and, further, that the plaintiff acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by the defendant and to the plaintiff's proximate injury.") (citations and punctuation omitted). A plaintiff alleging fraudulent inducement may either affirm the contract and sue for damages, or — as Vah has tried to do — "promptly rescind the contract and sue in tort for fraud." (Citation and punctuation omitted.) *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011). When the plaintiff enters into a written agreement, the fraud required to support a claim of fraudulent inducement "must be of a nature that the [plaintiff was] deprived of an opportunity to read the agreement[ ]." Id. at 189 (2). However, Vah has not alleged that he was deprived of an opportunity to read the contract documents. See id. (purchasers could not assert that they were fraudulently induced to enter a written contract without alleging that they were prevented from reading it).

Assuming, without deciding, that Vah may bring a claim for fraudulent

6

inducement here, he must show that "[Platinum] through misrepresentation, act, or artifice intentionally induced [him] to sign the [sales documents] *and that [he] justifiably relied on the misrepresentation, act, or artifice*, being reasonably diligent in the use of the facilities at [his] command." (Citation and punctuation omitted; emphasis supplied). *Jimenez v. Houseboats on Lanier*, 370 Ga. App. 788, 792 (1) (899 SE2d 334) (2024). Justifiable reliance also is an essential element of Vah's deceit and FBPA claims. See *Paulk v. Thomasville Ford Lincoln Mercury*, 317 Ga. App. 780, 782 (1) (732 SE2d 297) (2012) ("justifiable reliance by plaintiff" is an essential element of a deceit or fraud claim) (citation and punctuation omitted); *Lynas v. Williams*, 216 Ga. App. 434, 437 (3) (b) (454 SE2d 570) (1995) ("The Fair Business Practices Act incorporates the 'reliance' element of the common law tort of misrepresentation into the causation element of a[n] FBPA claim. Consequently, justifiable reliance is an essential element.") (citations and punctuation omitted).

(b) Whether a plaintiff's reliance on a defendant's alleged misrepresentations was reasonable is generally a jury question. *Raysoni v. Payless Auto Deals*, 296 Ga. 156, 157 (766 SE2d 24) (2014). The existence of a merger clause, however, alters this analysis:

> [W]hen one has entered a contract with a binding and comprehensive merger clause, any reliance upon precontractual representations is,

7

generally speaking, unreasonable as a matter of law. Likewise, when one is bound by a contract that includes terms that expressly, conspicuously, unambiguously, and squarely contradict precontractual representations, any reliance upon those precontractual representations may be deemed unreasonable as a matter of law.

(Citation and punctuation omitted.) *Villalobos v. Atlanta Motorsports Sales*, 355 Ga. App. 339, 342-343 (2) (844 SE2d 212) (2020). That is, a merger clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement," such that "a party cannot argue that they relied upon representations other than those contained in the contract." (Citation and punctuation omitted.) *Jimenez*, 370 Ga. App. at 792-793 (1).

In this case, Vah signed a bill of sale acknowledging that he was making the purchase "knowingly without any guarantee expressed or implied, by this dealer or his agent" and that the contract "includes all of the terms and conditions" of the parties' agreement and "cancels and supersedes any prior agreement written or oral." Vah also signed a buyer's guide providing that the purchase was "as is" with no dealer warranty.[3] Thus, pretermitting whether the car was in a prior accident, whether Platinum knew about any prior accident, and whether Platinum misrepresented the

---

[3] At a hearing on the parties' motions for summary judgment, Vah's attorney acknowledged that the buyer's guide was incorporated into the bill of sale.

accident history to Vah, the purchase documents that Vah signed foreclose any reasonable reliance on any such misrepresentation. See *Novare Group*, 290 Ga. at 190 (3) (because contractual merger clause estopped purchasers from relying on any representation outside of the contract, "they cannot sustain any of the causes of action that require justifiable reliance," including fraud, negligent misrepresentation, and FBPA claims).

Similarly, in *Villalobos*, supra, 355 Ga. App. 339, Villalobos alleged that he bought a used truck after the salesman assured him it was a "good running truck with no problems." Id. at 340. Villalobos signed a contract stating that it was "the entire agreement between the parties" and "supersede[d] all prior agreements . . . whether oral or written" and that the vehicle was sold "as is" with no warranty. Id. at 341. He also received a buyer's guide like the one used here, disclaiming any warranties, reiterating that the sale was "as is," and advising him to obtain an independent inspection. Id. Villalobos later discovered that the truck had an oil leak requiring costly repairs. Id. at 340. He sued the dealer for the same claims Vah asserts here — fraud, rescission of the contract, and violations of the UCC, FBPA, and Georgia Used Motor Vehicle Dealers' Act. Id. at 340, 347 (2).

We held that the dealer was entitled to judgment on the pleadings on all claims

except the UCC claim. Id. at 348 (2). We reasoned that the comprehensive merger clause, "as is" language, and warranty disclaimers foreclosed Villalobos from justifiably relying on any alleged extra-contractual promises about the truck's condition. Id. at 346-347 (1). The same reasoning applies here: the explicit merger, "as is," and warranty disclaimer clauses in Vah's sales documents barred reasonable reliance on any extra-contractual representations and entitled Platinum to summary judgment on Vah's fraud and FBPA claims in Counts 1, 2, and 4.[4]

Vah argues that his claims evade the merger clause in this case because he relied on concurrent, not precontractual, written statements — the online advertisement and clean Carfax report — that the car had not been in an accident.[5] Pretermitting whether

---

[4] Although Vah also claims to appeal the trial court' grant of summary judgment to Platinum on Count 3, his Used Car Dealer Act claim, he devotes no argument to that claim and therefore has abandoned it. See *Massey v. State Farm Fire & Cas. Co.*, 363 Ga. App. 588, 592 (871 SE2d 685) (2022). Regardless, we conclude that the trial court properly granted summary judgment to Platinum on that claim, as well. See *Villalobos*, 355 Ga. App. at 347 (1) (ruling that the dealer was entitled to judgment on the pleadings on Villalobos's Used Car Dealer Act claim because it "stem[med] from his allegations of fraud through these alleged misrepresentations," which were barred by the contract's merger clause).

[5] Vah also claims that he justifiably relied on the concurrent "We Owe" statement, which Platinum's manager issued to Vah when he pointed out that the car was missing its front bumper inserts, but that document did not make any representation about the car's accident history; it merely promised to replace a missing part. Vah has not asserted a claim for breach of that promise.

10

contemporaneous documents can vary the clear terms of an "as-is" sales contract, the online advertisement and Carfax report cannot resuscitate Vah's claims in this case. With regard to the advertisement, Vah related in his affidavit that he saw it *before* going to the dealership, so the merger clause pertaining to prior written representations precludes any reasonable reliance on the ad. Moreover, there is no evidence that the ad was part of the sales documents. Compare *Catrett v. Landmark Dodge*, 253 Ga. App. 639, 640-641 (1) (560 SE2d 101) (2002) (where buyer claimed that dealer fraudulently passed off a used car as new, a contractual merger clause did not entitle the dealer to summary judgment on the issue of reliance because several of the multiple purchase documents referred to the car as new, whereas others characterized it as used).

With regard to the Carfax report, the evidence is disputed as to whether Vah received it at closing along with the bill of sale and other transaction documents,[6] as he claims, or on the sales floor before the purchase, as Platinum's finance manager testified. Regardless, assuming the Carfax report was a contemporaneous purchase document upon which Vah could justifiably rely, it did not claim that the car was accident-free. Rather, the report stated that while no accidents or damage had been

_____

[6] These other transaction documents included a delivery and bailment agreement, odometer disclosure statement, and title application.

reported to Carfax, it was based "only on information supplied to CARFAX"; that "[o]ther information about th[e] vehicle, including problems, may not have been reported to CARFAX"; and that the report should be used as "one important tool, along with a vehicle inspection and test drive," to make a buying decision. Thus, by its terms, the report promised only that Carfax had received no information of any accident or damage. Vah does not claim, much less present evidence, that this representation was wrong — i.e., that Carfax actually received such information but excluded it from the report; nor does he assert that Platinum fraudulently altered the report. Under these circumstances, the Carfax report — even if considered a contemporaneous document — does not allow Vah to sidestep the comprehensive merger, "as is," and warranty disclaimer clauses in the sales documents. See *Jimenez*, 370 Ga. App. at 793 (1); *Villalobos*, 355 Ga. App. at 346-347 (1); compare, e.g., *Raysoni*, 296 Ga. at 159 (plaintiff purchaser might reasonably have relied on Carfax report where sales document contained only a limited contractual disclaimer that the defendant dealership "assume[d] no responsibility for any repairs regardless of any *oral statements* about the vehicle." (Emphasis supplied.)

In sum, because Vah signed sales documents containing comprehensive merger, "as-is," and warranty disclaimer clauses, he cannot prove the reasonable reliance

needed to establish his claims in Counts 1, 2, and 4 for rescission, violation of the FBPA, and deceit. And due to Vah's failure of proof on this essential element, we need not address his claims of error regarding Platinum's knowledge of the car's accident history or the scope of the FBPA.

*Case No. A25A0082*

2. In its cross-appeal, Platinum argues that the trial court erred by denying its motion for summary judgment on Vah's UCC revocation of acceptance claim because, among other things, Vah failed to show a "nonconformity" as required by the statute. We agree.

OCGA § 11-2-608 (1) permits a buyer to "revoke his acceptance of a lot or commercial unit whose noncomformity substantially impairs its value to him[.]" A threshold requirement for a claim under this statute is that "the value of the goods was substantially impaired by a noncomformity." *Paulk*, 317 Ga. App. at 785 (4). A seller provides nonconforming goods when it fails to perform "the totality of [its] contractual undertaking." (Citation and punctuation omitted.) *Esquire Mobile Homes v. Arrendale*, 182 Ga. App. 528, 528 (1) (356 SE2d 250) (1987). Compare OCGA § 11-2-106 (2) (goods are "'conforming' . . . when they are in accordance with the obligations under the contract"). Although determining whether this requirement has

been met is generally for the jury, "[i]ssues relating to a revocation of acceptance under the provisions of the UCC have been determined as a matter of law" if the uncontroverted facts establish that the plaintiff is not entitled to recover. (Citation and punctuation omitted.) *Franklin v. Augusta Dodge*, 287 Ga. App. 818, 821 (1) (652 SE2d 862) (2007).

As noted in Division 1, Vah purchased the car "as is" with no warranties. The nonconformity that Vah alleges is that the car had "undisclosed damage" in that "it had been in a wreck and/or rebuilt." However, pursuant to the sales documents, Platinum promised only to deliver to Vah a black 2016 Audi Q5 with a specified odometer reading and vehicle identification number. Vah does not contend that the car failed to conform to these parameters. This fact pattern is materially identical to that in *Bicknell v. B. & S. Enterprises*, 160 Ga. App. 307 (287 SE2d 310) (1981), in which the plaintiff bought a used car "as is," but later brought a UCC claim for revocation of acceptance against the dealer, alleging that she discovered after the purchase that the car needed multiple repairs. We explained that the "as is" clause precluded the buyer from showing any nonconformity within the meaning of the UCC:

> [A]lthough [the car] may have been in poor operating condition and in
> need of extensive repairs, those factors did not place it in

14

nonconformance with the contract. Insofar as the contract description is concerned, the dealer was required only to provide the plaintiff with a 1974 2-door Pontiac Firebird with an air-conditioner and an AM-FM radio.

(Citation omitted.) Id. at 309 (2). As in *Bicknell*, Vah does not allege that the car failed to match the contractual description.

There is some authority suggesting that a nonconformity may also occur when a product has "latent defects that render[ ] it not merchantable and fit for the particular purpose intended." *Imex Intl. v. Wires Engineering*, 261 Ga. App. 329, 335 (2) (g) (583 SE2d 117) (2003). However, Vah does not allege that the car was unfit for its intended purpose. Indeed, the undisputed evidence shows that he has driven it more than 30,000 miles and still owns it. See *Paulk*, 317 Ga. App. at 784-785 (cosmetic defects did not render car unfit for its intended use, "particularly in light of [the plaintiffs'] use of the car for over 24,000 miles").

Vah argues, nevertheless, that an "as is" clause cannot defeat a UCC claim. He cites *Prudential Metal Supply Corp. v. Atlantic Freight Sales*, 204 Ga. App. 439 (419 SE2d 520) (1992), upon which the trial court also relied, but that case is factually distinguishable. There, a seller of materials sued the buyer for nonpayment and later sought summary judgment, presenting the affidavit of its president that the materials

were sold "as is" and that the buyer inspected and accepted them. Id. at 439. The buyer, on the other hand, presented evidence that the agreement was for the purchase of current models of specific items and that the buyer rejected the goods because they did not match the contract description. Id. We reversed the trial court's grant of summary judgment in favor of the seller, noting that "[r]evocation is an available remedy even where the seller has attempted to limit its warranties by use of 'as is' language[.]" Id. at 440. However, our ruling turned on the conflicting evidence as to whether the contract specified particular goods that the seller failed to deliver: "At a minimum, there are factual disputes as to whether the goods were to be purchased 'as is,' or whether [the seller] made representations to which the goods failed to conform[.]" Id. Here, by contrast, there is no conflict about what the contract says and no dispute that Platinum delivered the promised item. *Prudential*, therefore, does not govern the result here.

Vah also cites *Villalobos*, supra, 335 Ga. App. at 347-348 (2), in which we held the dealer was not entitled to judgment on the pleadings on the used truck buyer's claim for revocation of acceptance, even though the car was purchased "as is," where the buyer alleged that the truck was mechanically damaged and the cost of the repair exceeded its value — i.e., that the truck was not fit for its intended use. We noted,

16

however, that

> an "as is" clause is not *entirely* irrelevant to a revocation of acceptance claim. The existence of such a clause is a relevant factor when determining the parameters of the sales agreement and, therefore, whether the seller had actually delivered goods that were "nonconforming."

(Emphasis in original.) Id. at 347 (2), n. 3 (2). See also OCGA § 11-2-106 (2) (defining "conforming" goods as those that "are in accordance with the obligations under the contract"). We declined to explore the meaning of "nonconforming" further in *Villalobos* because "the parties have not argued this point." 335 Ga. App. at 347 (2), n. 3 (2). In this case, however, Platinum *does* argue the point, and we conclude that the contract's "as is" clause bars Vah from seeking revocation of his acceptance of a car that complied with the bill of sale and performed its intended use. It follows that the trial court erred by denying summary judgment to Platinum on this claim.[7]

*Judgment affirmed in Case No. A25A0081 and reversed in Case No. A25A0082.*

*Brown and Watkins, JJ., concur.*

---

[7] Because we find that Vah cannot show a nonconformity under the evidence presented here, we need not address — and express no opinion on — Platinum's arguments that Vah's revocation of acceptance claim also fails because his revocation was untimely, there was a substantial change to the goods, and Vah reaccepted the goods.