A99A0782. FULLER v. DREISCHARF et al.
(517 SE2d 89)

McMURRAY, Presiding Judge.

Plaintiffs J. Spencer Dreischarf and Mary Jane Landis sued defendant Cleo W. Fuller, Jr., seeking to recover money they invested in a nonexistent corporation, allegedly as a result of defendant's fraudulent inducements. The jury found for defendant on plaintiffs' common law fraud count, but found him liable for securities fraud under OCGA §§ 10-5-12 and 10-5-14, awarding $10,000 in damages but no attorney fees. Defendant's motion for judgment notwithstanding the verdict was denied, and this appeal followed. *Held*:

1. Defendant first contends the trial court erred in charging[1] the jury that plaintiffs could recover under the Georgia Securities Act of 1973, OCGA § 10-5-1 et seq., because plaintiffs' right to recover the consideration paid for a security sold in violation of that Act, accorded by OCGA § 10-5-14 (a), is barred by the two-year statute of limitation established by OCGA § 10-5-14 (d). We agree and reverse.

(a) "Any person who violates subsection (a) of Code Section 10-5-12[2] shall be liable to the person buying such security; and such buyer may sue . . . to recover the consideration paid. . . ." OCGA § 10-5-14 (a). But "no person may sue under this Code section more than two years from the date of the contract for sale or sale, if there is no con-

---

[1] Exceptions to the charge were preserved by order of the trial court.

[2] In connection with an offer to sell, sale, offer to purchase, or purchase of any security, it is unlawful, directly or indirectly, to "employ a device, scheme or artifice to defraud." OCGA § 10-5-12 (a) (2) (A). The term "security" includes an investment contract. OCGA § 10-5-2 (a) (26).

tract for sale." OCGA § 10-5-14 (d).

In the case sub judice, the undisputed evidence is that plaintiffs invested $10,000 in a venture called Irish American Technologies, Ltd. ("IATL") by giving defendant a post-dated check for that amount with instructions to hold the check until July 3, 1995. The check, made payable to non-party Wesley E. Sanborn, was cashed on July 7, 1995. On April 30, 1997, defendant hand-delivered a letter to plaintiffs, informing them that "a certain Al Hendricks, who was the chairman of I.A.T.L., . . . has vanished with the [investment] money." The instant fraud complaint was not filed until September 10, 1997. Plaintiffs contend the investment contract was not completed until October 9, 1995, because that is when plaintiff J. Spencer Dreischarf received a receipt from Wesley E. Sanborn, acknowledging plaintiffs' vested interest in IATL, and so the claim is timely. We disagree.

> It has long been recognized and is well established that a statute of limitation begins to run on the date a cause of action on a claim accrues. In other words, the period within which a suit must be brought is measured from the date upon which the plaintiff could have successfully maintained the action.

*Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (1) (273 SE2d 16). In the case sub judice, plaintiffs had enforceable rights to either rescission or specific performance of the investment contract as soon as their check was cashed on July 7, 1995. Such a right of action is not dependent upon defendant's receipt, acknowledging plaintiffs' vested interest. Nor is it necessary that a plaintiff sustain all, or even the greater part of his damages, before the statute of limitation commences to run. Id. at 806 (1). Consequently, it is undisputed that the case sub judice was not commenced until some sixty days after the two-year limitation period expired.

(b) Nevertheless, plaintiffs contend the limitation period was tolled by defendant's fraud. The evidence of fraud, viewed in the light most favorable to plaintiffs, who obtained a favorable verdict, is that plaintiffs and defendant became neighbors in 1993. Plaintiff J. Spencer Dreischarf first invested small amounts with defendant, e.g., $1,000, and defendant "guaranteed [plaintiffs would] get twelve hundred fifty back or fifteen hundred dollars back, and generally those came true." As for IATL, defendant said the company was manufacturing an antimicrobial hand cream "that would protect the skin from germs, everything from bacteria to HIV." Defendant told plaintiffs that a facility already existed; the technology already existed; some experimental batches of the cream already existed; and that he had seen the cream in action. Plaintiffs understood their money was

"to help start up production and also to fill an existing order . . . for one hundred forty-four thousand dollars worth of this antimicrobial cream." Defendant guaranteed that, at the very least, "after a couple of years [plaintiffs] would come out with a 20 percent profit. . . ." Plaintiff J. Spencer Dreischarf never telephoned Wesley E. Sanborn, to whom the $10,000 check was made out, because he trusted defendant, who instructed plaintiffs to direct all their questions to him. Plaintiffs never received a stock certificate, even though, "from the get-go, [they] asked for proper documentation what [they] were investing in. [They] wanted to have in writing . . . what the profits would be and all the details."

Absent a confidential relationship, "The fraud which tolls a statute of limitation must be such actual fraud as could not have been discovered by the exercise of ordinary diligence. [Cits.] . . . This rule is applied even where actual fraud is the gravamen of the action." *Bahadori v. Nat. Union Fire Ins. Co.*, 270 Ga. 203, 205 (3) (507 SE2d 467). See also *Middleton v. Pruden*, 57 Ga. App. 555, hn. 2 (196 SE 259).

Plaintiffs uncritically accepted the word of defendant, their neighbor, without ever inquiring of a licensed stock broker (or the Irish consulate) about the status (or even existence) of IATL. Nor did they take steps to confirm IATL's ownership of an alleged patent regarding antimicrobial technology or the existence of a major purchase order before they parted with $10,000. Although there is evidence plaintiff J. Spencer Dreischarf insisted on proper documentation, plaintiffs nevertheless chose to invest without ever receiving anything resembling a prospectus or financial statements prepared according to generally accepted accounting principles. In our view, this is not due diligence.

The buyer and seller of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary are presumed to be dealing at arm's length. *Gardiner v. McDaniel*, 202 Ga. App. 663 (1), 664 (415 SE2d 303). Even though actual fraud is the gravamen of this cause of action, we conclude that plaintiffs cannot rely on the equitable tolling provisions of OCGA § 9-3-96 because they failed to exercise reasonable diligence to discover the fraud before they invested $10,000 in a non-existent foreign company. See *Stricker v. Epstein*, 213 Ga. App. 226, 229 (2) (444 SE2d 91). Moreover, since they had actual knowledge of the alleged fraud more than two months before the expiration of the limitation period, they cannot claim to have been deterred or debarred from bringing a timely claim.

2. Remaining contentions, having been considered, are rendered moot.

*Judgment reversed. Andrews and Ruffin, JJ., concur.*

DECIDED APRIL 29, 1999 —
RECONSIDERATION DENIED MAY 10, 1999 — CERT. APPLIED FOR.

*Wagner, Johnston & Rosenthal, C. David Johnston,* for appellant.

*Whelchel & Dunlap, Charles N. Kelley, Jr.,* for appellees.