A10A2214. WEINSTOCK et al. v. NOVARE GROUP, INC. et al.
(710 SE2d 150)

MILLER, Presiding Judge.

Shaun Weinstock and David Sarif bought condominiums on the south side of Twelve Atlantic Station ("Twelve"), a residential tower located in Atlanta. Weinstock and Sarif contend that defendants Novare Group, Inc. and its alleged affiliates[1] (collectively, "Novare"), who marketed and sold Twelve, were involved in a scheme to sell and advertise condominiums at Twelve as having spectacular city views while intending to block those same views by later constructing The Atlantic, a 46-story tower, on a lot directly south of Twelve. In their complaint, as amended, Weinstock and Sarif sued Novare raising claims of negligent misrepresentation, fraud in the inducement, negligent supervision, breach of implied easement rights, and violation of the Georgia Fair Business Practices Act, OCGA § 10-1-390 et seq. (FBPA). The trial court granted summary judgment to Novare on all claims, from which Weinstock and Sarif appeal. We affirm. Weinstock and Sarif, who did not timely rescind their purchases,

---

[1] The other defendants are Atlantic WN Properties, Inc., Novare Group Holdings, LLC, Twelve Hotels and Residences, LLC, and WN Atlantic Properties, LLC.

could not justifiably rely on representations that were not made in their purchase contracts. The claim of fraudulent inducement, as couched by Weinstock and Sarif, does not support the conclusion that Novare induced the sale by concealing a defect in the property. Novare successfully pointed to a lack of evidence to create an issue of material fact on the claims of negligent supervision and breach of implied easement rights. Lastly, we agree with the trial court that the FBPA claim is barred by the statute of limitation.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the grant or denial of a motion for summary judgment, this Court must conduct a de novo review of the evidence and view the undisputed facts in the light most favorable to the nonmoving party.

(Footnotes omitted.) *ChoicePoint Svcs. v. Graham*, 305 Ga. App. 254, 255 (699 SE2d 452) (2010).

So viewed, the evidence shows that in 2006 Weinstock and Sarif each bought a residential condominium unit on the south side of Twelve from defendant WN Atlantic Properties, LLC. Novare Group, WN Atlantic, and the other defendants were involved in the marketing and sale of Twelve condominiums.

Twelve is a 26-story building which Novare marketed as having "spectacular city views." Novare knew that at the time of marketing and selling of condominiums at Twelve that The Atlantic would be constructed south of Twelve and would obstruct views of the Atlanta skyline, but Novare did not disclose this fact to Weinstock and Sarif, who contend that they paid a premium for the view. Upon construction, The Atlantic obstructed the view of downtown Atlanta from Weinstock's and Sarif's condominiums.

Novare also knew that real estate agents would be asked about future development on the building pads located around the property, including the pad where The Atlantic was to be constructed. The sales agents were directed to respond to questions about whether the building would be developed and how high it might be as follows:

> It is likely that all of the building lots around our building will be developed. No developments have been announced, and the timing is uncertain. They could be developed at any point in the future. There is not [sic] height limit on buildings which could be developed on those sites.

Weinstock and Sarif deposed that in response to direct question-

ing, real estate agents represented that the development on the property where The Atlantic is now located would be a low to mid-rise building and would not be constructed for five years.

1. Weinstock and Sarif contend that the trial court erred in granting summary judgment to Novare on Weinstock's and Sarif's negligent misrepresentation claim. We disagree.

(a) Justifiable reliance is an essential element of negligent misrepresentation. *Real Estate Intl. v. Buggay*, 220 Ga. App. 449, 452 (3) (469 SE2d 242) (1996). The purchase contracts contain a comprehensive merger clause providing that the respective contracts reflected the "entire agreement" between the parties and that, among other things, no party relied upon any representation or warranty not set forth in the contract.[2] The purchase contracts further provide, in bold capital letters prominently located on the first page of the respective documents, that oral representations cannot be relied upon as stating the representations of the seller. Disclosures within the contracts include that "[t]he views from and natural light available to the Unit may change over time due to, among other circumstances, additional development. . . ." In light of the merger clause and the disclosures contained within the purchase contracts, Weinstock and Sarif could not rely on prior representations regarding the view from the condominiums or the height of the building to be constructed on the site now occupied by The Atlantic. See *Megel v. Donaldson*, 288 Ga. App. 510, 515 (4) (654 SE2d 656) (2007) (in light of merger clause, appellant was "estopped from asserting that she relied upon [appellee's] earlier promises"); *Savage v. KGE Assocs. Ltd. Partnership*, 260 Ga. App. 770, 776 (2) (a) (580 SE2d 591) (2003) (in light of entire agreement clause, "[t]he purchaser is . . . barred from claiming that he or she relied on an alleged misrepresentation not contained within the agreement") (citation and punctuation omitted).

(b) Weinstock and Sarif argue that because they sought to rescind the purchase contracts that they need not be restricted to reliance upon representations made within the purchase contracts themselves. "It is inconsistent to apply a disclaimer provision of a contract in a tort action brought to determine whether the entire contract is invalid because of alleged prior fraud which induced the

---

[2] The contracts provide:
This agreement contains the entire agreement between the parties hereto. No agent, representative, salesman or officer of the parties hereto has authority to make, or had made, any statements, agreements, or representations, either oral or in writing, in connection herewith, modifying, adding to, or changing the terms and conditions hereof and neither party has relied upon any representation or warranty not set forth in this Agreement. No dealings between the parties or customs shall be permitted to contradict, vary, add to, or modify the terms hereof.

354

execution of the contract." *City Dodge v. Gardner*, 232 Ga. 766, 770 (208 SE2d 794) (1974). See *del Mazo v. Sanchez*, 186 Ga. App. 120, 125 (366 SE2d 333) (1988) ("If the party elects to rescind the contract as voidable, he is not bound by the provisions of the rescinded contract. If the defrauded party elects to affirm the contract and sue for damages for fraud and deceit he is bound by the contract provisions.") (citation omitted). Weinstock and Sarif further assign error to the trial court's finding that they affirmed the contract by failing to seek rescission in the original complaint.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." (Citation omitted.) *Ekeledo v. Amporful*, 281 Ga. 817, 819 (1) (642 SE2d 20) (2007). In this case, Weinstock and Sarif did not attempt to rescind the purchase contract before filing suit, nor did they raise a rescission claim contemporaneously therewith. Compare *Nexus Svcs., Inc. v. Manning Tronics, Inc.*, 201 Ga. App. 255, 256 (410 SE2d 810) (1991) (rescission is a prerequisite to the filing of the action). The original complaint filed on April 24, 2008 alleged fraud in the inducement and violation of the FBPA. Almost a year later, on March 23, 2009, Weinstock and Sarif amended their complaint to include a prayer to rescind the purchase contract.[3] "An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered." *Holloman v. D.R. Horton*, 241 Ga. App. 141, 146 (3) (524 SE2d 790) (1999) ("The original complaint, by affirming the contract and seeking damages resulting from the alleged fraud without alleging any cause of action for rescission, constituted an election of remedies and a waiver of any rescission claim.") Id. at 146-147 (3). Weinstock and Sarif do not contend that they learned of the alleged fraud only after filing their complaint.

We have generally found that a claim for damages unaccompanied by a claim for rescission operates as an election to affirm the underlying contract. *Megel*, supra, 288 Ga. App. at 515 (3) (appellant failed to pursue claim for rescission until filing amended complaint); *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 827 (1) (586 SE2d 726) (2003) (contract affirmed where appellant only sought money damages in counterclaim and failed to seek rescission until after appellee raised the issue); *Markowitz v. Wieland*, 243 Ga. App. 151, 153 (1) (532 SE2d 705) (2000) (even if there were an attempted rescission, complaint for damages without

---

[3] Their claims for negligent misrepresentation, negligent supervision, and breach of implied easement rights were added in a second amended complaint, filed on May 26, 2009.

a claim for rescission affirmed the contract); *Consulting Constr. v. Edwards*, 207 Ga. App. 296, 298 (1) (427 SE2d 789) (1993) ("appellants' attempt to rescind the contract in response to the appellee's motion for summary judgment was untimely," and as a result affirmed the contract). Weinstock and Sarif argue that the fraud claim set forth in their original complaint was nevertheless sufficient to support their claim for rescission. *Arko v. Cirou*, 305 Ga. App. 790, 793, n. 2 (700 SE2d 604) (2010) and *Conway v. Romarion*, 252 Ga. App. 528, 531-532 (1) (557 SE2d 54) (2001), relied on by Weinstock and Sarif for this point, are distinguishable. Compare *Sarif v. Novare Group, Inc.*, 306 Ga. App. 741, 744 (1) (703 SE2d 348) (2010) (construing pleadings favorably to appellants in context of a motion for judgment on the pleadings).[4]

In *Conway*, the plaintiffs did not set forth a specific rescission claim in their original complaint, but they asserted their intent to rescind in a timely fashion before filing their action, they noted the rejection of their tender in the complaint, and they even attached the letter of rescission thereto. *Conway*, supra, 252 Ga. App. at 531-532 (1). We found that under those circumstances the plaintiffs could amend their complaint to formally assert a rescission claim. Id. at 532 (1). In *Arko*, the appellants filed a complaint seeking to rescind two instruments, and we concluded that the fraud allegations of the complaint supported a later attempt to rescind a third related agreement notwithstanding that the complaint did not "expressly pray" to rescind that specific contract. *Arko*, supra, 305 Ga. App. at 793, n. 2. Unlike *Arko*, Weinstock and Sarif did not file a suit for rescission and, unlike *Conway*, they did not reference rescission in their initial complaint after seeking to rescind the underlying transaction. Rather, Weinstock and Sarif continued to enjoy the fruits of their contracts and did not raise the issue of rescission in the original complaint, and the later amendment to the complaint did not "formally" or "expressly" set forth a claim for rescission raised by the original complaint or underlying facts.[5] Arguably, Weinstock's

---

[4] Although there are some overlapping parties, facts, and theories of recovery between this appeal and *Sarif*, which also involves fraud claims by purchasers of condominiums in Twelve, *Sarif* is a separate civil action. In that case, we reviewed an appeal from the grant of a motion on the pleadings and "construe[d] the complaint in a light most favorable to the appellant[s], drawing all reasonable inferences in [their] favor." Id. at 742. (Citation and punctuation omitted.) So construed, appellants had notified appellees of their intent to rescind their purchases before filing the complaint, and we concluded that the appellants had not affirmed their purchase contracts for purposes of a judgment on the pleadings. Id. at 744 (1) (a). Here, both the standard of review and the facts, as developed for purposes of the motion for summary judgment, differ from those in *Sarif*.

[5] Weinstock and Sarif argue that whether they timely rescinded the purchase agreement was irrelevant because "a party need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so

and Sarif's failure to include a specific claim for breach of contract in the original complaint left their intentions unclear. But this ambiguity must be weighed against the requirement that the intent to rescind be announced "as soon as" the underlying facts supporting the claim are discovered. See *Holloman*, supra, 241 Ga. App. at 146 (3). Accordingly, we conclude that the circumstances of this case are not sufficient to authorize a departure from the general rule. Weinstock's and Sarif's attempt to assert a claim for rescission in 2009 by amendment to the complaint was too late because the original complaint for damages affirmed the purchase contracts.

In light of the foregoing, we conclude that the trial court did not err in awarding summary judgment to Novare on Weinstock's and Sarif's negligent misrepresentation claim.

2. Weinstock and Sarif claim that the trial court erred in granting summary judgment to Novare on their claim for fraudulent inducement. As we found in Division 1 (b), supra, Weinstock and Sarif affirmed their purchase contract and did not "promptly rescind" the agreements. "[W]here the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail." (Citations and punctuation omitted.) *Ekeledo*, supra, 281 Ga. at 819 (1). Thus, to the extent the plaintiff's fraudulent inducement claim is supported by alleged acts of misrepresentation, it is without merit. See *Herman Homes v. Smith*, 249 Ga. App. 131, 132-133 (1) (547 SE2d 591) (2001) (fraudulent inducement claim for concealment of drainage defect failed in light of entire agreement clause in purchase contract). Compare *Sarif*, supra, 306 Ga. App. at 744-745 (1) (a) (where pleadings did not require the conclusion that purchasers had affirmed the contract, claim for fraud via active concealment withstood motion for judgment on the pleadings).

Weinstock and Sarif point out that their fraudulent inducement claim alleges Novare's active and passive concealment of a defect in the property. Therefore, they contend, the trial court erred in relying on the contract's merger clause in analyzing this claim.

> [W]here a buyer affirms the sales contract and sues claiming, not that the seller made extracontractual oral or written misrepresentations about the purchased property,

would be unreasonable." *Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 542 (2) (b) (478 SE2d 382) (1996). Weinstock and Sarif contend that the existence of mortgage loans on the properties rendered tender unnecessary. Assuming, but not deciding, that no tender was required, this does not excuse an unreasonable delay in electing the remedy of rescission. Id. at 543 (2) (b).

but that the seller actively or passively concealed damage or defects in the purchased property, there is no basis for using an entire agreement clause in the sales contract as a defense to the suit.

*Browning v. Stocks*, 265 Ga. App. 803, 806 (2) (595 SE2d 642) (2004). In *Browning*, the seller fraudulently concealed termite damage with putty and paint. Id. at 804-805 (1). Here, Weinstock and Sarif do not allege that Novare concealed a defect in the condominium itself. See *Dickey v. Clipper Petroleum, Inc.*, 280 Ga. App. 475, 478 (2) (634 SE2d 425) (2006) (plaintiff failed to allege or prove a defect in the installed equipment; fraud in the inducement claim was barred by decision to affirm the contract). We find no merit in Weinstock's and Sarif's attempt to characterize an (eventually) obstructed view of downtown Atlanta from their condominiums as a "defect" for purposes of their concealment claims, and Weinstock and Sarif do not cite to authority that would demand a different conclusion. See generally *Worthey v. Holmes*, 249 Ga. 104, 105 (2) (287 SE2d 9) (1982) (passive concealment doctrine permits homeowner "to recover for latent building construction defects about which he did not know and in the exercise of ordinary care would not have discovered"). Accordingly, we find that the trial court did not err in granting summary judgment on Weinstock's and Sarif's fraudulent inducement claim.

3. Weinstock and Sarif challenge the trial court's findings of a lack of evidence to support their claim for negligent supervision. They contend that Novare failed to satisfy its burden on this issue because it failed to present evidence to negate an essential element of a negligent supervision claim. However,

> [a] defendant who does not bear the burden of proof at trial need not produce evidence or disprove the plaintiff's claim on summary judgment. Rather, the defendant meets its summary judgment burden by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the plaintiff's case.

(Punctuation and footnotes omitted.) *Grossman v. Brown & Webb Builders*, 255 Ga. App. 897, 899 (1) (567 SE2d 116) (2002). Novare did exactly this in its moving papers.

Weinstock and Sarif also contend that there was evidence of record to support a negligent supervision claim. "An employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain

behavior relevant to the injuries allegedly incurred by the plaintiff." (Punctuation and footnote omitted.) *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2) (681 SE2d 258) (2009). Weinstock and Sarif argue that Novare could have anticipated that its agents would make misrepresentations about the development of the neighboring properties. However, they failed to produce evidence showing that any of Novare's agents had a tendency to engage in misrepresentation or fraud. See id. (summary judgment to employer on issue of negligent supervision proper where the record was devoid of evidence that employer knew or should have known that employee had previously engaged in reckless behavior). Further, the terms of the purchase contracts, including the merger clause and the disclaimers therein, relieved Novare of any duty to Weinstock and Sarif concerning representations made by sales agents. See, e.g., *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 912-913 (4) (600 SE2d 841) (2004) (claim of negligence in supervision of property barred by contract).

4. Weinstock and Sarif contend that the trial court erred in granting summary judgment to Novare on their claim for breach of implied easement rights. This claim rests upon the theory that Novare violated their implied easement rights under OCGA § 44-9-2[6] and common law by construction of The Atlantic. Novare has pointed to an absence of a material issue of fact as to the application of OCGA § 44-9-2. The Atlantic was constructed on a lot which was owned by Atlantic Station LLC, not WN Atlantic, at the time that Weinstock and Sarif bought their condominiums. Moreover, the lot was separated from Twelve by 17th Street. The easement contemplated by OCGA § 44-9-2 only arises when "a person sells a house and the light necessary for the reasonable enjoyment thereof is derived from and across adjoining land *belonging to such person*." (Emphasis supplied.) See *Goddard v. Irby*, 255 Ga. 47, 48 (1) (335 SE2d 286) (1985) (where "*common grantor* could not have conveyed an easement in [appellee's] property with the sale of a house on the [appellant's] lot" an implied easement did not arise) (emphasis supplied).[7] It follows

---

[6] OCGA § 44-9-2 provides:

A right to an easement of light and air passing over another's land through existing lights or windows may not be acquired by prescription; but, when a person sells a house and the light necessary for the reasonable enjoyment thereof is derived from and across adjoining land belonging to such person, the easement of light and air over such vacant lot shall pass as an incident to the house sold as being necessary to the enjoyment thereof.

[7] After Novare pointed out that the record showed a lack of common ownership of the two lots, Weinstock and Sarif failed to come forward with evidence that would give rise to a triable issue of fact. Weinstock and Sarif did allege below that they would pierce the corporate veil, but they did nothing to show that the separateness of the corporate entities should be disregarded. Further, even if we agreed with Weinstock and Sarif that there remained an issue as to

that an implied easement under OCGA § 44-9-2 could not arise here. Further, a violation of the general right to free passage of light and air is not implicated under the record. *Savannah Jaycees Foundation v. Gottlieb*, 273 Ga. App. 374, 379 (3) (615 SE2d 226) (2005) ("the right to the free passage of light and air is subject to the superior right of the adjoining landowner to make use of his property in good faith, and so long as it is not for a malevolent purpose he may improve his property in such a way as to cut off the free passage of light and air over his property") (punctuation and footnote omitted).

5. Lastly, Weinstock and Sarif contend that the trial court erred in granting summary judgment to Novare on their FBPA claims (i) because their cause of action was not barred by the statute of limitation and (ii) because Weinstock and Sarif could show that they justifiably relied on the representations made in violation of the FBPA.[8] We agree with the trial court that the FBPA claims were barred by the statute of limitation. Accordingly, we do not reach the issue of justifiable reliance for purposes of the FBPA.

"[N]o action shall be brought [under the FBPA] . . . [m]ore than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation[.]" OCGA § 10-1-401 (a) (1). This language requires consideration of "the timing of the alleged FBPA violation and whether [Weinstock and Sarif] exercised due diligence in discovering it." *Tiismann v. Linda Martin Homes Corp.*, 279 Ga. 137, 138 (610 SE2d 68) (2005). The limitation period, however, cannot begin until the cause of action accrues. Id. "The true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." (Citations and punctuation omitted.) Id. "[A] private FBPA claim has three elements: a violation of the Act, causation, and injury." (Citation and punctuation omitted.) Id. at 139.

The alleged violations of the FBPA occurred before Weinstock and Sarif closed on their condominiums in February 2006. They filed the original complaint on April 24, 2008, alleging, among other things, that on March 31, 2006, the Atlanta Business Chronicle published an article outlining Novare's plans to build a 40-50 story condominium tower known as The Atlantic. They do not dispute

---

common ownership, an implied easement for a view of downtown Atlanta could not have arisen under the terms of the purchase contracts. "The introduction of an implied term into the contract of the parties can only be justified when the implied term is not inconsistent with some express term of the contract[.]" (Citation, punctuation and emphasis omitted.) *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 149 (1) (304 SE2d 365) (1983).

[8] Weinstock and Sarif also contend that the trial court erred in finding the FBPA was pre-empted by the Georgia Condominium Act, OCGA § 44-3-111 et seq. The trial court did not directly address the issue but assumed the FBPA applied. Novare does not contest the issue for purposes of this appeal.

they were aware of the article at that time. Weinstock and Sarif contend, however, that they could not have successfully maintained an action for unlawful and deceptive practices until Novare constructed The Atlantic and blocked the advertised "spectacular city views." This occurred, they argue, no earlier than February or March 2007, when Novare broke ground on The Atlantic's development site. Alternatively, Weinstock and Sarif maintain that the statute of limitation did not run on their FBPA claim because Novare concealed its wrongful scheme through fraud and deceit. See OCGA § 9-3-96 ("If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud").

Weinstock's and Sarif's FBPA claims are analogous to those of other consumers who contend that they paid for something other than what they received due to a seller's deceptive business practices. They claim, in effect, that they "paid a premium price for a [condominium with spectacular views] and got a much less valuable [condominium] instead." *Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 85 (2) (663 SE2d 779) (2008). That premium was paid at closing and they were injured at that time. See, e.g., *Tiismann*, 279 Ga. at 139 (appellant could not suffer damages for violation of FBPA until the house was conveyed). At the latest, Weinstock and Sarif were actually injured when the prospect that the view from condominiums on the south side of Twelve would be blocked became public knowledge in March 2006.[9]

Further, Weinstock and Sarif do not dispute knowledge of the article disclosing Novare's plans to build The Atlantic in March 2006, at which time any reasonable person would have realized that their views of the city were at risk. In light of the media reports, Weinstock and Sarif "knew or should have known of the occurrence of the alleged violation," OCGA § 10-1-401, more than two years before they filed suit. "Once [Weinstock and Sarif] learned of this potential problem, they were obligated to exercise reasonable diligence to protect their interest in their home and their legal rights." *Scully v. First Magnolia Homes*, 279 Ga. 336, 339 (2) (614 SE2d 43) (2005) (statute of limitation began to run when purchasers became aware through media accounts of potential problem with their home's stucco).

Weinstock's and Sarif's argument that fraud tolled the statute of

---

[9] According to Weinstock's and Sarif's complaint, "upon public disclosure of [Novare's] plans to build The Atlantic, the value of south side condominiums would be significantly diminished."

limitation is without merit. "The fraud which tolls a statute of limitation must be such actual fraud as could not have been discovered by the exercise of ordinary diligence." (Citations and punctuation omitted.) *Fuller v. Dreischarf*, 238 Ga. App. 18, 20 (1) (b) (517 SE2d 89) (1999). Even assuming that Novare had fraudulently hidden its plans to construct The Atlantic from Weinstock and Sarif and had thereby deterred them from learning that Novare's representations with regard to the "spectacular city views" were false, they were not deterred from discovering the truth once Weinstock and Sarif were put on notice that Novare planned to build a tower south of Twelve. *Hendry v. Wells*, 286 Ga. App. 774, 780 (1) (650 SE2d 338) (2007) ("the statute of limitation would not be tolled where the plaintiff had information in her possession from which she could have discovered the truth"). We conclude, therefore, that the trial court correctly granted summary judgment to Novare on Weinstock's and Sarif's FBPA claims.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED MARCH 28, 2011 —
RECONSIDERATION DENIED APRIL 14, 2011 — ▮▮▮▮▮▮

*Weinstock & Scavo, Wallace H. Ehrenclou, James R. Fletcher II*, for appellants.

*Troutman Sanders, William N. Withrow, Jr., Thomas E. Reilly, Brian P. Watt*, for appellees.