S11G0478. NOVARE GROUP, INC. et al. v. SARIF et al.

(718 SE2d 304)

HUNSTEIN, Chief Justice.

We granted certiorari to determine whether the Court of Appeals erred when it reversed the trial court's grant of judgment on the pleadings on Purchasers' claims for fraud, negligent misrepresentation, negligent supervision, and violation of the Georgia Fair Business Practices Act ("FBPA"). We now hold that the trial court properly granted judgment on the pleadings, and, therefore, we reverse the Court of Appeals.

Appellants David Sarif, Les Retter, Jay Baker, Ron Agami, Jonathan Samuels, Donna Wong, Sean Warren and Shaun Weinstock ("Purchasers") each bought a residential condominium on the south side of Twelve Atlantic Station ("Twelve") in late 2005 or early 2006. Purchasers brought suit against Novare Group, Inc., WN Atlantic Properties LLC, Atlantic WN Properties, Inc., Twelve Hotels and Residences LLC, Novare Group Holdings LLC, Michael Everly, James Borders (collectively, "Developers") and Novare Realty LLC ("Brokers"), alleging that at the time of their purchases at the 26-story Twelve, Developers had already undertaken plans to develop the 46-story Atlantic directly across the street. Developers advertised "spectacular city views" from Twelve, and Brokers advised that any future development to the south of Twelve would be low- to mid-rise office buildings. Purchasers allege they paid substantial premiums for their views of the city from the south side of the building, which are now blocked by the Atlantic.

Each Purchaser signed an agreement containing a provision

stating that "[t]he views from and natural light available to the Unit may change over time due to, among other circumstances, additional development and the removal or addition of landscaping"; a disclaimer at the top of the first page as required by the Georgia Condominium Act stating that "ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF SELLER"; an express disclaimer in which Purchasers affirmed that they did not rely upon any representations or statements of Brokers;[1] and a comprehensive merger clause.[2]

Purchasers filed this lawsuit on December 31, 2008, raising allegations of fraud in the inducement, negligent misrepresentation, negligent supervision, and violation of the FBPA, as well as negligence claims against the individual defendants. The complaint does not state a separate cause of action for rescission, though it does include rescission as one of the prayers for relief.

On the same date the lawsuit was filed, counsel for Purchasers sent a certified letter to Developers' counsel demanding rescission on behalf of all eight Purchasers. The letter states that Purchasers "desire a rescission and hereby tender same." Though the letter purports to give Developers thirty days to respond to the demand for rescission, the letter also states that Purchasers had already "filed the enclosed civil action against all the named defendants."

Developers filed a motion to dismiss or for judgment on the pleadings in July 2009, and Purchasers filed a motion for summary judgment in August 2009. In separate orders, the trial court granted judgment on the pleadings in favor of Developers and denied Purchasers' motion for summary judgment. The Court of Appeals reversed the trial court's order of judgment on the pleadings as to fraud in the inducement based on active concealment, negligent misrepresentation, negligent supervision, and violation of the FBPA.[3] See *Sarif v. Novare Group, Inc.*, 306 Ga. App. 741, 742 (703

---

[1] "Brokers" is defined to include Novare Realty LLC and its sales agents, whose alleged statements form the basis of Purchasers' claims.

[2] The merger clause states:

24. *ENTIRE AGREEMENT.* This agreement contains the entire agreement between the parties hereto. No agent, representative, salesman or officer of the parties hereto has authority to make, or has made, any statements, agreements, or representations, either oral or in writing, in connection herewith, modifying, adding to, or changing the terms and conditions hereof and neither party has relied upon any representation or warranty not set forth in this Agreement. No dealings between the parties or customs shall be permitted to contradict, vary, add to, or modify the terms hereof.

[3] Two of the Purchasers, David Sarif and Shaun Weinstock, filed a lawsuit, which preceded this action, against some of the same Developers asserting similar claims (the "Weinstock action"). See *Weinstock v. Novare Group, Inc.*, 309 Ga. App. 351 (710 SE2d 150) (2011). Following discovery, the trial court granted the Developers' motion for summary

SE2d 348) (2010). This appeal ensued.

1. The Court of Appeals held that Purchasers successfully pled a claim for rescission, and thus, could sustain their fraud-based claims. However, even construing the pleadings favorably to Purchasers, as we are required to do, it is clear that Purchasers did not properly rescind the agreements.

" 'In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud.' " *Ekeledo v. Amporful*, 281 Ga. 817, 819 (1) (642 SE2d 20) (2007). Where a party elects to rescind the contract, he must do so prior to filing the lawsuit. See *Williams v. Fouche*, 157 Ga. 227 (1) (121 SE 217) (1924).

Purchasers failed to tender rescission prior to filing their lawsuit. In *Williams*, the Court recognized that "the rule requiring one who seeks the rescission of a contract on the ground of fraud to restore, or offer to restore, the consideration received, *as a condition precedent* to bringing the action, is settled in this State." (Emphasis supplied.) Id. at 228-229. The Court in *Williams* reasoned that the party charged with perpetrating a fraud should be given the opportunity to redress the wrong before being served with a suit for rescission. Id. at 228.

Here, Purchasers sent a certified letter to Developers' counsel purporting to rescind their agreements on the same day they filed their lawsuit. However, the letter clearly states that the lawsuit had already been filed. Given that the Developers should have been given the opportunity to correct any wrong *before* being served with a lawsuit, Purchasers' demand for rescission, served contemporaneously with the filing of their lawsuit, cannot be held to satisfy the prerequisite.

Therefore, the trial court was correct in finding that the Purchasers did not properly elect rescission as a remedy, and the Court of Appeals erred in reversing its decision.

2. More importantly, the question of whether Purchasers elected rescission is moot. It is well-settled law in Georgia that a party who has "the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of his signature to the

judgment, and the Court of Appeals affirmed. Sarif and Weinstock filed a petition for certiorari with this Court, which is pending. See *Weinstock*, supra, petition for cert. denied, S11C1307 (Ga. Jan. 9, 2012).

The Court of Appeals in *Weinstock* acknowledged the decision of the Court of Appeals in this case, and determined that there was no inconsistency between the two decisions because this case was decided on the pleadings and *Weinstock* was decided on summary judgment based on a fully-developed factual record. See 309 Ga. App. at 355, n. 4.

instrument" based on oral representations that differ from the terms of the contract. *Craft v. Drake*, 244 Ga. 406, 408 (260 SE2d 475) (1979). Statements that directly contradict the terms of the agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. Id. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract. *Beckwith v. Peterson*, 227 Ga. 403 (1) (181 SE2d 51) (1971).

In *Craft*, the plaintiff alleged that a bank officer fraudulently induced him to execute certain notes by misrepresenting that plaintiff's home would not be used as collateral for the note. However, the express terms of the note specifically stated that the holder would have a security interest in any property held by the plaintiff at the time of execution or subsequently acquired. The Court held that because the oral misrepresentation was directly contradicted by the language of the agreement and because the statements were promissory in nature as to future acts, the plaintiff was bound by the terms of the note he signed. See *Craft*, 244 Ga. at 408.

The crux of Purchasers' argument here is that they are not bound by the terms of their agreements because Brokers promised "spectacular city views" from the south side of Twelve at the same time that Developers were moving forward with plans to erect a 46-story condominium across the street that would ultimately block Purchasers' views. Nevertheless, Purchasers all signed agreements that expressly state that the views may change over time, oral representations of the sellers could not be relied upon, Purchasers did not in fact rely upon any oral representations or statements of Brokers, and the entire agreement between the parties was set forth in the terms of the written contract.

Therefore, the fraud alleged by Purchasers is not the type of fraud that allows a party to cancel or rescind a contract. To be able to rescind a contract, the fraud must be of a nature that the Purchasers were deprived of an opportunity to read the agreements. There is no allegation in this case that Developers or Brokers tried to prevent the Purchasers from reading the terms of the agreements. Rather, the alleged misrepresentation upon which Purchasers premise their fraud claim is simply a promise regarding future events — specifically a promise that their views would not be blocked. However, this Court made clear in *Craft* that future promises are not sufficient to sustain fraud-based claims. *Craft*, 244 Ga. at 408. Purchasers are not entitled to back out of a written agreement whose terms expressly contradict the oral representations on which Purchasers claim to have relied. Accordingly, the Court of Appeals

erred in holding that Purchasers were not bound by the agreements they signed.

3. Since Purchasers did not properly elect rescission as a remedy, and more importantly, were not entitled to rescission as a remedy, they are bound by the terms of their agreements. Therefore, Purchasers cannot maintain their claims for fraud in the inducement based on active concealment, negligent misrepresentation, or the FBPA. Where a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract. See *First Data POS, Inc. v. Willis*, 273 Ga. 792 (2) (546 SE2d 781) (2001).

Justifiable reliance is an essential element of Purchasers' fraud, negligent misrepresentation, and FBPA claims. See *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137 (1) (637 SE2d 14) (2006) (reliance element of common law tort of misrepresentation is incorporated into the causation element of an individual claim under the FBPA); *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 769-770, n. 1 (208 SE2d 794) (1974) (justifiable reliance is essential element of fraud claim); *Real Estate Intl., Inc. v. Buggay*, 220 Ga. App. 449 (3) (469 SE2d 242) (1996) (justifiable reliance is essential element of negligent misrepresentation claim). Since Purchasers are estopped from relying on a representation outside of the agreement, they cannot sustain any of the causes of action that require justifiable reliance. Therefore, the fraud, negligent misrepresentation, and FBPA claims fail, even construing the pleadings most favorably to Purchasers.

Nevertheless, Purchasers argue that the determination of justifiable reliance is a jury question. While justifiable reliance may be a jury question in a fraud case where no contract exists or where the contract has become void, it is a question of law in a case where the contract language prevails and the contract's merger clause precludes reliance on oral representations. Compare *City Dodge*, 232 Ga. at 770 (holding that justifiable reliance is a jury question where the contract containing the merger clause was found invalid due to an antecedent fraud) with *First Data POS*, 273 Ga. at 796 (holding as a matter of law that a valid merger clause precludes any subsequent claim for deceit based on pre-contractual representations). Because there can be no justifiable reliance where Purchasers are bound by their agreements, particularly where those agreements contain a comprehensive merger clause, the Court of Appeals erred in holding that the Purchasers' fraud-based claims could proceed.

4. Finally, the Purchasers' claim for negligent supervision must also fail. For an employer to be held liable for negligent supervision, there must be " 'sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly

incurred by the plaintiff.' " *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (681 SE2d 258) (2009) (citation omitted). Further, a motion for judgment on the pleadings is authorized where the undisputed facts that appear from the pleadings establish that the movant is entitled to judgment as a matter of law. *Rolling Pin Kitchen Emporium, Inc. v. Kaas*, 241 Ga. App. 577 (2) (527 SE2d 248) (1999). All well-pleaded facts are to be accepted as true. However, the trial court is not required to adopt a party's legal conclusions based on those facts. Id.

In this case, Purchasers alleged that Developers provided a script to Brokers regarding the undeveloped lot to the south of Twelve and other nearby lots directing Brokers to tell potential buyers that "[n]o developments have been announced, and the timing is uncertain. [The sites] could be developed at any point in the future. There is not [sic] height limit on buildings which could be developed on those sites." Purchasers allege Brokers routinely departed from the script, promising spectacular views and stating that any development south of the building would be low- to mid-rise office buildings. Purchasers further allege that Developers were negligent in the supervision of its Brokers by permitting them to depart from the script and that Developers knew or should have known that the actions of its Brokers would cause harm to purchasers at Twelve.

Purchasers' allegations of negligent supervision and assertions that Developers knew or should have known that the agents' actions would harm purchasers at Twelve are legal conclusions and are not based on any specifically pled facts. Nowhere in the complaint do Purchasers allege that Developers actually knew of the agents' departure from the script or permitted it. Further, Purchasers have not alleged that Brokers displayed any tendencies to disregard the script that Developers knew or should have known about. The trial court was not required to accept Purchasers' legal conclusions in consideration of the motion for judgment on the pleadings where there were no specifically pled facts to support the conclusions.

Therefore, the trial court correctly found that Purchasers did not sufficiently plead a cause of action against the Developers for negligent supervision, and the Court of Appeals erred when it reversed the trial court's decision on that count.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 21, 2011.

*Troutman Sanders, Thomas E. Reilly, Brian P. Watt, William N. Withrow, Jr.*, for appellant.

*Weinstock & Scavo, Michael Weinstock, Ehrenclou & Grover, Wallace H. Ehrenclou, The Geheren Firm, James R. Fletcher II*, for appellee.

*Weissman, Nowack, Curry & Wilco, Seth G. Weissman, Ned Blumenthal*, amici curiae.