McMlLLlAN, Judge,
concurring in part and dissenting in part.
For the reasons set forth below, I must respectfully dissent to Division 4 and Division 5 of the majority opinion.
1. Contrary to the majority’s holding in Division 4, Legacy was entitled to a directed verdict on Mamilove’s claim for rescission of the franchise agreement.
As the majority states, it is undisputed in this case that Michele Reymond and Lorraine Reymond did not read the franchise agreement prior to signing. Further, as the majority acknowledges, it is “well-settled law in Georgia that a party who has the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of [the contract] based on... representations that differ from the terms of the contract.” (Citation and punctuation omitted.) Novare Group v. Sarif, 290 Ga. 186, 188-189 (2) (718 SE2d 304) (2011). Nevertheless, the majority concludes that Mamilove is entitled to rescind the franchise agreement despite the Reymonds’ failure to read it because the jury was authorized to find that they were “pressured” or “rushed” into signing it.
But being pressured or rushed into signing an agreement does not provide a legal excuse for not reading the agreement. As the Supreme Court also explained in Novare,
[i]n fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract.... To be able to rescind a contract, the fraud must *794 be of a nature that the [party seeking to rescind the contract was] deprived of an opportunity to read the agreements.
(Emphasis supplied.) Id. at 189 (2). In this case, although the Reymonds set out evidence that the Turners “rushed” or “pressured” them into signing the agreement “right then” by telling them they would lose the franchise opportunity if they did not act, they presented no evidence that the Turners said or did anything that prevented them from reading the agreement before they signed it. Citizens Bank, Vienna v. Bowen, 169 Ga. App. 896, 897 (1) (315 SE2d 437) (1984) (the fact that one party was in a “hurry” to have the agreements signed does not mean the other party was prevented from reading it); see also Tidwell v. Critz, 248 Ga. 201, 203 (1) (282 SE2d 104) (1981) (“threat of losing a job or fear of such loss not duress which will void a contract”); Citicorp Indus. Credit v. Rountree, 185 Ga. App. 417, 420 (1) (364 SE2d 65) (1987) (“[t]he fact that appellees deemed themselves too busy to read the ... agreements prior to signing them will not authorize them to avoid their obligations”); Bradley v. Swift & Co., 93 Ga. App. 847, 856 (3) (93 SE2d 364) (1956) (being occupied with other business does not mean party was fraudulently induced to sign).
Thus, Mamilove was bound by the terms of the franchise agreement, which contained a merger clause and disclaimers[34] that it had not received any representations concerning potential income or earnings claims prior to signing the agreement. Accordingly, Mamilove could not rescind the agreement based upon allegations that it was fraudulently induced to enter into the agreement based on a false earnings spreadsheet, and the trial court should have granted Legacy’s motion for directed verdict on this claim. Novare, 290 Ga. at 189 (2) *795 (“[purchasers are not entitled to back out of a written agreement whose terms expressly contradict the oral representations on which Purchasers claim to have relied.”); Campbell v. Citizens & Southern Nat. Bank, 202 Ga. App. 639, 640 (1) (415 SE2d 193) (1992) (party not prevented from reading the contract cannot claim he was fraudulently induced to sign by promises which contradict the contract terms)..
2. Because Mamilove was not entitled to rescind the agreement, I also disagree with the majority’s conclusion in Division 5 that the disclaimers and merger clause contained in the agreement were ineffectual. In other words, because Mamilove “[was] not entitled to rescission as a remedy, [it was] bound by the terms of [its] agreement[ ].” Novare, 290 Ga. at 190 (3). Cf. City Dodge, Inc. v. Gardner, 232 Ga. 766 (208 SE2d 794) (1974). These provisions precluded the Reymonds’ claim that they reasonably relied on or were deceived by the earnings spreadsheet when they executed the franchise agreement. Accordingly, the trial court should have granted Legacy’s motion for directed verdict on Mamilove’s claims for fraud, negligent misrepresentation, and RICO violations. Novare, 290 Ga. at 190 (3) (“Since Purchasers are estopped from relying on a representation outside of the agreement, they cannot sustain any of the causes of action that require justifiable reliance.”); First Data POS, Inc. v. Willis, 273 Ga. 792, 796 (2) (546 SE2d 781) (2001) (“merger clause ... precludes any subsequent claim of deceit based upon pre-contractual representations.”); W. R. Grace & Co.-Conn. v. Taco Tico Acquisition Corp., 216 Ga. App. 423, 426 (1) (454 SE2d 789) (1995) (“[t]his [C]ourt has consistently held that disclaimers in contracts prevent justifiable reliance on other representations purportedly made by the parties.”).
3. Mamilove argues, however, that even if we were to decide that it was not entitled to rescind the franchise agreement and accordingly it was bound by its terms, we nevertheless must sustain the jury’s verdict as long as the verdict in its favor on its other claims remains extant. But as our Supreme Court explained in Georgia Power Co. v. Busbin, 242 Ga. 612, 616-617 (8) (250 SE2d 442) (1978), “the [general] verdict [35] cannot stand for the reason that this court cannot determine whether the verdict was entered upon a proper basis.” See also Godwin v. Godwin, 265 Ga. 891, 892 (1) (463 SE2d 685) (1995). Accordingly, I believe that Legacy must be granted a new trial on its other claims, including their negligence claim under OCGA § 51-1-6.[36]
*796 Decided July 16, 2014 —
Reconsideration denied July 31, 2014 —
C. David Joyner, Gregory, Doyle, Calhoun & Rogers, Stuart L. Sims, Charles L. Bachman, Jr., for appellants.
Ichter Thomas, Cary Ichter, W. Daniel Davis, for appellees.
I am authorized to state that Presiding Judge Andrews and Judge Ray join in this opinion.

 Paragraph 24.2 of the franchise agreement provides:
No Representations, Warranties or Guarantees. Franchisor expressly disclaims the making of, and Franchisee and each Owner acknowledge that it has not received from Franchisor or any party on behalf of Franchisor, any representation, warranty or guarantee, express or implied, as to the potential volume, profit, income or success of the business licensed under this Agreement.
Paragraph 24.7 provides:
No Earnings Claims. Franchisee acknowledges that neither Franchisor, nor any person on behalf of Franchisor, has made any written, oral or visual representation of (i) earnings capability of Legacy Academy Center; (ii) a specific level of potential sales, income, gross or net profit for the Franchisee; or (iii) a specific level of sales, income, gross or net profits of existing centers (whether franchised or company-owned) other than as specifically described in the Offering Circular.
The merger clause was contained in paragraph 24.6 and provides:
Entire Agreement. Franchisee acknowledges that this agreement constitutes the entire agreement of the parties with respect to the matters contained herein. This Agreement terminates and supersedes any prior agreement between the parties concerning the same subject matter.

 The verdict form was general as to liability for the claims asserted.

 I concur with the majority’s conclusion in Division 1 that Legacy waived the statute of limitation defense as to this claim.